UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

UNITED STATES OF AMERICA

v.  No. 5:19-cr-2-BJB

TREVOR PUTTY

\* \* \* \* \*

MEMORANDUM OPINION & ORDER

Trevor Putty is serving a 100-month prison sentence for illegally possessing firearms and a destructive device. He seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)—citing his medical condition, family circumstances, and rehabilitation. Putty, however, hasn't shown that these reasons are "extraordinary and compelling." And releasing him early would be inconsistent with the sentencing factors that Congress has directed judges to consider. So the Court denies Putty's motion.

I.

Trevor Putty's most recent encounter with the criminal-justice system began in July 2018 in Christian County, Kentucky. He threatened a woman, held a gun to her head and stomach, and hit her toe with a hammer. Presentence Report (DN 27) ¶ 9. The victim fled the house and surreptitiously called the local police. *Id*. When police arrived, they searched the house (with her permission) for Putty. ¶ 11. Although they didn't find him, they did find a sawed-off shotgun, a handgun, and an improvised bomb. *Id*.

Federal prosecutors charged Putty with three crimes: 1) possessing weapons and ammunition after a felony conviction under 18 U.S.C. §922(g); 2) possessing an unregistered sawed-off shotgun under 26 U.S.C. §5841, 5861(d) and 5871; and 3) possessing an unregistered bomb under the same statutes. Superseding Indictment (DN 14) at 28–29. Putty pled guilty to all three counts without a written plea agreement with the Government. Transcript of Change of Plea Hearing (DN 36) at 2. The Judge previously assigned to this case sentenced him to a term of 100 months imprisonment on each count, to be served concurrently. Judgment (DN 30) at 3. This sentence fell at the lowest end of the advisory guideline range. Transcript of Sentencing Hearing (DN 37) at 11.

II.

In November of 2020, Putty filed his first motion for compassionate release. He noted that he has a "serious traumatic brain injury" and was at significant risk of contracting COVID-19. First Motion for Compassionate Release (DN 39) at 5. The Court denied this motion since Putty gave "no indication that he has exhausted his

administrative remedies with respect to his request for compassionate release." Memorandum and Order (DN 40) at 1.

Putty's pending motion, unlike his previous one, appears to confirm that he exhausted of administrative remedies. Section 3582 allows a defendant to exhaust his remedies in two ways: he "may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days after the warden received the compassionate release request—whichever is earlier." *United States v. Jones*, 980 F.3d 1098, 1105 (6th Cir. 2020). Putty submitted his request for compassionate release to the prison warden on March 13, 2023. Second Motion for Compassionate Release (DN 76) at 3. The request is marked as received by the warden on the same date. DN 76-3 at 1. And Putty filed his compassionate-release motion on May 8, 2023. DN 76. So he appears to have satisfied § 3582(c)(1)(A)'s exhaustion requirement.

### III.

If lack of exhaustion doesn't bar consideration of a compassionate-release motion, district courts apply a "three-step inquiry" to determine whether early release is warranted under the statute Congress enacted. *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (quotation omitted). Compassionate release is appropriate only if (1) the prisoner shows that "extraordinary and compelling reasons warrant the [sentence] reduction," (2) the Court determines that "any sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) the prisoner "persuade[s] the district judge to grant the motion after the court considers the § 3553(a) factors." *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (quotations omitted). Those factors include the prisoner's "history and characteristics," the "nature and circumstances of the offense" and the need to "protect the public," deter criminal conduct, promote respect for the law, and avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a). Compassionate-release motions fail if any of these three prerequisites under § 3582(c)(1)(A) are unmet. *Elias*, 984 F.3d at 519.

Until recently, the second step played no role in the analysis. Congress instructed the Commission to "describe what should considered extraordinary and compelling reasons for [a] sentence reduction." 28 U.S.C. § 994(t). But the Sentencing Commission didn't promulgate a policy statement addressing motions filed by defendants (as opposed to wardens) until 2023. *See McCall*, 56 F.4th at 1054 (noting lack of promulgation as of late 2022). The Commission's policy statement, which took effect on November 1, 2023, identified six categories of reasons that individually, or in combination, may be "extraordinary and compelling." Those categories are the defendant's (1) medical circumstances, (2) age, or (3) family circumstances; (4) abuse suffered in custody involving a "sexual act" or "serious bodily injury"; (5) "other reasons" similar to those in (1)–(4); and (6) an "unusually long sentence." § 1B1.13(b). The policy statement also directs court to confirm that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." § 1B1.13(a)(2).

2

**A. Extraordinary and Compelling Reasons.** Putty has offered three reasons in support of early release that he asserts are "extraordinary and compelling." First, he asserts that he has a "medical condition regarding [a] large plate in [his] head," which means that "a blow or any impact to my head could be fatal." Second Motion for Compassionate Release at 5. This plate allegedly causes—or at least exists alongside—"severe migraines from the noise, anxiety, [and] PTSD." *Id*. Second, he claims that several of his relatives "need help," including his grandmother (who is 81 and recently had hip surgery), his mother (who lives alone), and his sister (who has three young daughters). *Id*.; First Supplemental Letter (DN 77). Finally, he points to his "positive progress while being" incarcerated. *Id*.

**1. Medical condition.** The recent policy statement identifies four situations in which a defendant's medical circumstances may be extraordinary and compelling. These cover instances in which the defendant is:

- "suffering from a terminal illness";
- suffering from a "serious physical or medical condition" or a "serious functional or cognitive impairment" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover";
- "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death"; or
- housed in a facility affected by a disease outbreak, at an increased risk for medical complications or death if he or she contracts the disease, and there is no other way to mitigate the risk that the defendant will contract the disease. U.S.S.G. § 1B1.13(b)(1).

While Putty's medical conditions appear to be serious and may put him at greater risk of other complications, they do not resemble any of the situations identified by the policy statement. Putty hasn't established or even alleged that he is not being provided necessary medical care, *see* § 1B1.13(b)(1)(C), or that his conditions diminish his ability to provide self-care, *see* § 1B1.13(b)(1)(B). And his skull plate, migraines, anxiety and PTSD do not appear to be terminal illnesses under § 1B1.13(b)(1)(A). Nor does Putty assert that he is housed at a facility affected by an infectious-disease outbreak or that his conditions place him at an increased risk for complications from any such disease. *See* § 1B1.13(b)(1)(D).

Putty's skull plate cannot justify compassionate release for a separate reason. "Facts that existed when a defendant was sentenced cannot later be construed as 'extraordinary and compelling' justifications for a sentence reduction." *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021). The plate was placed in Putty's skull in 2012. DN 76-3 at 25. He was sentenced in 2020. And the district judge who sentenced Putty knew about this condition, which was mentioned in the presentence report. PSR ¶ 51.

**2. Family circumstances.** According to the policy statement, family circumstances can rise to an "extraordinary and compelling reason" supporting compassionate release if a defendant's immediate family member is "incapacitat[ed]" and the defendant "would be the only available caregiver." § 1B1.13(b)(3). And the Sixth Circuit has described (before the policy statement) an "extraordinary" reason as one that is "most unusual" and "far from common." *McCall*, 56 F.4th at 1055.

Putty asserts that his mother "lives alone and needs help," his sister "needs help with" caring for her three daughters, and that his grandmother needs someone to care for her while she recovers from hip surgery. Second Motion for Compassionate Release at 5; First Supplemental Letter.

Putty's desire to help his family is commendable, but—as with his medical conditions—it does not support early release. Putty has not established that he is "the only available caregiver" for any of his family members. § 1B1.13(b)(3). Though he asserts—in conclusory fashion—that his grandmother will "need 24/7 … care" and "[t]here is no other immediate family available," First Supplemental Letter, he provides no evidence to support this claim. As other courts have held, "a mere allegation … without more" may not be "an extraordinary and compelling reason for early release." *United States v. Stewart*, 86 F.4th 532, 536 (3d Cir. 2023). Nor has he shown that his mother or sister are "incapacitat[ed]." First Supplemental Letter.

Unfortunately, "incarcerated people … commonly leave innocent partners, parents, and children to fend for themselves as a result of criminal conduct." *United States v. Williams*, No. 1:17-cr-103, 2020 WL 3502819, *3 (S.D. Ohio June 29, 2020). The Court sympathizes with Putty's family situation. But, sadly, it is not extraordinary.

**3. Rehabilitation.** That leaves Putty's "positive progress while being" incarcerated. Second Motion for Compassionate Release at 5. Putty has informed the Court that he is "now a man of God" and that his rehabilitative efforts while incarcerated have "save[d]" his life. Second Supplemental Letter (DN 85). This "positive progress" is admirable, but Congress has legislated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). And because none of his other asserted reasons are extraordinary and compelling, his claim of rehabilitation cannot support compassionate release.

**B. Section 3553(a) factors.** Even if Putty could establish "extraordinary and compelling reasons," a sentence reduction would be inconsistent with the factors Congress has directed judges to consider before granting compassionate release. *See* § 3582(c)(1)(A) (cross-referencing 18 U.S.C. § 3553(a)).

Putty's motion did not address these factors. They direct a court to consider, among other things, the "history and characteristics of the defendant," the "nature and circumstances of the offense," and the need for the sentence to promote respect for the law, reflect the seriousness of the offense, provide just punishment, deter criminal conduct, and avoid unwarranted sentencing disparities. § 3553(a).

These factors cut against a sentence reduction. Putty's offenses were violent and serious. According to the PSR, he held a gun to a woman's head and stomach and "slammed a hammer on her toe." ¶ 9. When law enforcement arrived at the scene, they discovered two firearms and a homemade bomb. ¶ 11. And he did this as a convicted felon. Multiple guns and explosives are far more concerning and far less understandable than, say, a convicted felon who feels compelled to carry a firearm out of fear for his or his family's physical safety. Granting Putty early release would therefore be inconsistent with the need to adequately punish and deter such dangerous criminal conduct. Nor would it promote respect for the law. Putty received a sentence at the low end of the advisory guidelines range. His existing sentence, therefore, does not appear to result in any sentencing disparities—but reducing that sentence below the guidelines range might.

**C. Consistency with the policy statement.** Compassionate release must also be consistent with the Sentencing Commission's policy statement. Besides defining what constitutes extraordinary and compelling reasons, the Commission directed courts to consider whether "[t]he defendant is … a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." § 1B1.13(a)(2). As discussed above, granting Putty a sentence reduction would contradict the policy statement's definition of extraordinary and compelling reasons. Since Putty fails to satisfy either of the other two requirements for compassionate release, the Court needn't consider whether he would pose a danger to any person or the community if released. *See Elias*, 984 F.3d at 519.

## ORDER

The Court denies Putty's motion for compassionate release (DN 76).

Benjamin Beaton, District Judge
United States District Court

June 20, 2024